UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| RANDY BRIAN TERRILL #154514, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:05-cv-96 |
| | ) | |
| v. | ) | HON. RICHARD ALAN ENSLEN |
| | ) | |
| TERRI BERTUSSI, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| _____ | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* Complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Complaint for failure to state a claim.

**Discussion**

     I.       Factual Allegations

Plaintiff Randy Brian Terrill, an inmate at the Gus Harrison Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Terri Bertussi, who was employed as a Corrections Officer at the Marquette Branch Prison (MBP) during the events at issue in this case. As an attachment to his Complaint, which is conclusory and fails to allege any specific facts, Plaintiff attaches a copy of the motion for relief from judgment and the opinion dismissing without prejudice in *Terrill v. Bertussi, et al.*, Case No. 2:00-cv-47 (W.D. Mich. Jan. 6, 2003). It appears that Plaintiff is seeking to reassert the claims previously brought in that case, which was dismissed without prejudice for failure to exhaust administrative remedies. *See Terrill, supra*.

In his complaint in *Terrill*, Plaintiff claimed that on June 3, 1998, Maintenance Worker Michelin placed a portable scaffold in G-Unit at MBP and specifically instructed Resident Unit Manager Pearson, Corrections Officer Kescular and Defendant Bertussi that no inmate be allowed on or near the scaffold. On June 5, 1998, Kescular informed Plaintiff that Warden Hofbauer had directed Corrections Officer Green to complete the job and get the scaffold out of G-Unit. Kescular further stated that Green had indicated that Plaintiff should do the work. Plaintiff informed Kescular that climbing up on a scaffold was not in his job description as a janitor, but Kescular insisted that Plaintiff comply with his order.

Between June 5 and June 8, 1998, Defendants Bertussi and Green, Kescular, Laitinen, Larson and Pearson ordered Plaintiff to work on the scaffold and denied his request for reassignment. In addition, these individuals harassed and ridiculed Plaintiff for his fear of heights. On June 8,

1998, a maintenance worker ordered Plaintiff to get down from the scaffold and informed Michelin that Plaintiff had been doing the work in G-Unit. Plaintiff alleges that Michelin filed an employee grievance indicating that no inmate was to use the scaffold equipment for safety and security reasons.

On June 9, 1998, Associate Warden Osier saw Plaintiff working on the scaffold and indicated that Plaintiff was doing a good job. On June 10, 1998, Plaintiff informed Kescular that he could do no more work on the scaffold until it was moved. Kescular indicated that the maintenance worker had the key for the scaffold and that he would call and get it. Plaintiff alleges that the scaffold was moved and that he was ordered by Kescular to go up on the scaffold and begin painting. Plaintiff climbed the scaffold and began to work, but the end of the scaffold shifted away from the wall and Plaintiff fell 30 feet to the concrete floor.

Plaintiff went to the officers' station and Defendant Bertussi immediately telephoned medical services at MBP. The physician's assistant instructed Defendant Bertussi to lock Plaintiff in his cell and indicated that he would see Plaintiff in approximately one hour. Subsequently, Plaintiff was required to walk to medical services and the physician's assistant visually examined Plaintiff. The physician's assistant stated that Plaintiff was suffering from "musculature strain" and sent Plaintiff back to his unit.

Between June 10, 1998, and November 1, 1998, Plaintiff submitted health care requests citing pain, numbness, paralysis, and the inability to comfortably stand or sit. In addition, G-Unit staff, including Defendant Bertussi, called medical services countless times. However, Plaintiff was not seen by medical staff. Plaintiff alleges that he had an x-ray and an MRI on November 2, 1998. On November 10, 1998, Plaintiff was told by Dr. Carolyn that two of his vertebrae were ruptured and herniated and that surgery would be required.

On February 1, 1999, Plaintiff was transferred to the Southern Michigan Correctional Facility (JMF), so that surgery could be performed. On March 12, 1999, Plaintiff underwent his first surgery. On November 20, 1999, Plaintiff had a second surgery, which was required because of the extent of his injuries and the time delay in receiving medical care.

Plaintiff contends that his injuries have left him permanently disabled and have resulted in severe pain and suffering. Plaintiff claims that Defendant Bertussi knowingly placed Plaintiff at risk and failed to maintain a safe work environment. Plaintiff claims that Defendant Bertussi's actions violated his rights under the Eighth Amendment to the United States Constitution. Plaintiff seeks unspecified relief.

II. Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff is asserting a violation of his Eighth Amendment rights. The Cruel and Unusual Punishment Clause of the Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crime. Punishment may not be

"barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Trop v. Dulles*, 356 U.S. 86 (1958). The clause therefore prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

An Eighth Amendment claim comprises objective and subjective components: (1) a sufficiently grave deprivation, and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837. Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness. *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4).

The reason for focusing on a defendant's mental attitude is to isolate those defendants who inflict punishment. *Farmer*, 511 U.S. at 839. The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Id.* at 835; *see also Whitley v. Albers*, 475 U.S.

312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"). As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839.

Plaintiff's action concerns workplace safety. The Eighth Circuit has held that the intentional placement of a prisoner in dangerous surroundings can violate the Eighth Amendment, though mere negligence is not sufficient. *Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th Cir. 1991); *see also Lee v. Sikes*, 870 F. Supp. 1096, 1099 (S.D. Ga. 1994) (applying Eighth Amendment to workplace safety); *Arnold v. South Carolina Dep't of Corr.*, 843 F. Supp. 110, 113 (D.S.C. 1994) (indicating that it is questionable whether the Eighth Amendment applies to work-related prison injuries). To show deliberate indifference in the context of workplace safety, prisoners must show that their captors have "knowingly compel[led them] to perform physical labor which is beyond their

strength, or which constitutes a danger to their lives or health, or which is unduly painful." *Ray v. Mabry*, 556 F.2d 882, 882 (8th Cir. 1977).

The types of factual circumstances which are insufficient to show deliberate indifference are illustrated by the Eighth Circuit's decision in *Warren v. Missouri*, 995 F.2d 130 (8th Cir. 1993) and by the District of South Carolina's decision in *Arnold*, 843 F. Supp. at 111. In *Warren*, an inmate was injured when a board "kicked back" from a table saw that he was operating at the furniture factory at the state penitentiary. 995 F.2d at 130. The inmate alleged that the defendants were deliberately indifferent in failing to equip the saw with an anti-kickback feature despite knowledge of prior injuries. The district court granted defendants' motion for summary judgment, and the Eighth Circuit affirmed. *Id.* at 130-31. Defendants introduced evidence that there had been twenty-nine table saw injuries in the five years preceding the inmate's injury, as well as efforts to correct the working condition of the saws when the injuries occurred; the plaintiff introduced evidence that there had been twenty-one prior injuries. *Id.* at 131. Based on this evidence, the Eighth Circuit found that there was no genuine issue of deliberate indifference to a serious issue of workplace safety. *Id.* at 131.

In *Arnold*, an inmate working in the prison kitchen was burned by a twenty-five-gallon pot that tipped downward. 843 F. Supp. at 111. The inmate alleged that the kitchen supervisor had been informed that the pot was faulty, and the supervisor had replied that they did not have time to fix it. *Id.* at 113. The district court held that there was no evidence that defendants possessed the requisite culpability by failing to repair the pot, and, at best, the inmate had offered evidence which showed only negligence. *Id.*; *see also Stephens v. Johnson*, 83 F.3d 198, 201 (8th

Cir. 1996) (even assuming that the administrator was aware of safety problems at the warehouse, such a showing falls short of creating a genuine issue of deliberate indifference to workplace safety).

Plaintiff's complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 437 (6th Cir. 1987). A dismissal for failure to state a claim may not be countenanced upon a judge's disbelief of the factual allegations, and the Court regards Plaintiff's factual allegations as true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Even so, it is improper for the Court to assume that Plaintiff could prove facts not alleged in his Complaint or to assume that Defendant has violated laws in ways not alleged. *Cline v. Rogers*, 87 F.3d 176, 184 (6th Cir. 1996). Moreover, "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid*, 859 F.2d at 437 (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976). Plaintiff's factual allegations do not raise an inference that Defendant was deliberately indifferent to his safety.

Plaintiff's broad assertion that Defendant was "deliberately indifferent" does not support his conclusion; merely stating the "magic words" is not enough. *See Arnold*, 843 F. Supp. at 113 (despite use of phrase "deliberate indifference" in his pleadings, inmate failed to show that defendants possessed the requisite mental state). Rather, Plaintiff must support his conclusion with factual allegations.

The factual allegations in Plaintiff's Complaint which pertain to the element of deliberate indifference are scant. Plaintiff alleges that Defendant Bertussi had been specifically instructed that no inmate was to be allowed on or near the scaffold. However, there is no indication that Defendant Bertussi was aware of any specific risk to Plaintiff's health or safety when he required

Plaintiff to use the scaffold. In addition, Defendant Bertussi was not the officer who ordered him to use the scaffold after it had been moved and immediately prior to Plaintiff's injury. Finally, Plaintiff concedes that, following the injury, Defendant Bertussi immediately telephoned medical services at MBP. The physician's assistant instructed defendant Bertussi to lock Plaintiff in his cell and indicated that he would see Plaintiff in approximately one hour. Plaintiff also states that between June 10, 1998, and November 1, 1998, Defendant Bertussi called medical services countless times on Plaintiff's behalf after Plaintiff complained of pain, numbness, paralysis, and the inability to comfortably stand or sit. Nothing in Plaintiff's complaint supports a finding that Defendant Bertussi acted with deliberate indifference. The factual allegations against the named Defendant, at most, support only an inference of negligence. As stated, mere negligence is insufficient to state a claim under the Eighth Amendment. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>December 2, 2005 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |